UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| NATALIE ROOSA, | ) |
|     Plaintiff, | ) CIVIL COMPLAINT |
| v. | ) |
| DEBT MANAGEMENT PARTNERS, LLC, and JOHN DOE CORP. d/b/a ELITE DEBT BROKERS | ) Case No. 5:19-cv-730 |
|     Defendants. | ) **JURY DEMAND** |

**COMPLAINT**

Now comes NATALIE ROOSA ("Plaintiff,") complaining as to DEBT MANAGEMENT PARTNERS, LLC ("DMP"), and JOHN DOE CORP. d/b/a "ELITE DEBT BROKERS" (collectively, "Defendants").

**NATURE OF THE ACTION**

1. Plaintiff brings this action pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. § 1692 *et seq.*; the Ohio Consumer Sales Practices Act ("CSPA") under Ohio Rev. Code Ann. § 1345 *et seq.*; and the Ohio Corrupt Practices Act ("OCPA"), R.C. 2923.31 *et seq.*

**JURISDICTION AND VENUE**

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

[ 1 ]

3. Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial portion of the events giving rise to the claims occurred within this District.

## PARTIES

4. Plaintiff is a natural person residing in Stark County.

5. DMP is a New York limited liability company.

6. John Doe Corp. is an unknown entity purported located on Staten Island that does business as "Elite Debt Brokers," "Liberty," and "Universal." Plaintiff intends to discover the true identity of this business during the course of this action.

## FACTS SUPPORTING CAUSES OF ACTION

7. Plaintiff incurred a payday loan debt of approximately $150 from "Check N' Go" to cover her day to day living expenses.

8. She later defaulted on this debt.

9. The payday lender sold the debt to DMP. DMP then "transferred" collection of the loan to John Doe Corp.

10. Plaintiff is informed and believes that when DMP "transfers" a consumer account to a debt collection agency, DMP continues to exercise control over collection activities on that account.

11. For instance, on February 25, 2019, a DMP employee stated that DMP has the ability to "recall" debts that DMP has placed with other agencies.

12. John Doe Corp. repeatedly called Plaintiff and threatened to sue her.

13. On information and belief, John Doe Corp. is not registered to do business in Ohio, and thus had no ability to sue Plaintiff and had no intention of doing so.

14. John Doe Corp. repeatedly threatened to come to Plaintiff's place of employment and speak with her supervisor about the debt.

15. John Doe Corp. repeatedly refused to identify itself by its true name.

16. John Doe Corp. referred to itself as "Liberty" on some occasions and as "Universal" on other occasions.

17. John Doe Corp. refused to send Plaintiff any paperwork regarding her debt, including the federally required notice commonly known as a "§ 1692g notice."

18. On information and reference, with interest and permissible fees, the total amount of Plaintiff's payday loan debt was $188.93.

19. John Doe Corp. stated that Plaintiff had to pay "restitution" and "court costs" that would "easily total $1,000."

20. John Doe Corp. repeatedly threatened Plaintiff with arrest and prosecution for "check fraud."

21. John Doe Corp. stated that a "location order" for Plaintiff had issued from a Stark County court.

22. John Doe Corp. claimed that process servers were attempting to locate Plaintiff.

23. These statements were entirely false. No "location order" has ever issued for Plaintiff, and no process servers were looking for Plaintiff.

24. Plaintiff has never received, and upon belief, John Doe Corp. never sent, any notices in the mail (such as those commonly called "§ 1692g" notices) to Plaintiff.

25. Plaintiff has suffered anxiety related to John Doe Corp.'s threats.

**COUNT I—VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

26. Plaintiff realleges the paragraphs above as though fully set forth herein.

27. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

28. Defendants are "debt collector[s]" as defined by § 1692a(6) of the FDCPA because the principal purposes of their businesses are the collection of debts, and because they use the instrumentalities of interstate commerce to do so.

29. In the alternative, Defendants are "debt collector[s]" under § 1692(a)(6) because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

30. The subject debt is a "debt" as defined by FDCPA § 1692a(5) because the debt owed or due or asserted to be owed or due to another arises out of a transaction for personal, family, or household purposes, being in this case a payday loan debt.

31. John Doe Corp. violated the FDCPA in the following ways:

   a. Failing to disclose its identity in violation of § 1692d(6);

   b. Falsely threatening a lawsuit, in violation of § 1692e(5);

   c. Stating that Plaintiff committed a crime, in violation of § 1692e(7);

   d. Falsely Inflating the amount of the debt in violation of § 1692f;

   e. Failing to send required disclosures to Plaintiff under § 1692g.

32. DMP is liable for John Doe Corp.'s actions. *See, e.g.*, *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) ("[A]n entity that is itself a 'debt collector'—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf.").

[ 4 ]

## **COUNT II – VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**

33. Plaintiff realleges the paragraphs above as though fully set forth herein.

34. The CSPA, pursuant to R.C. 1345.02(A), states that "[n]o supplier shall commit an unfair or deceptive practice in connection with a consumer transaction."

35. Plaintiff is a "person" as defined by R.C. 1345.01(B).

36. Defendants are "supplier[s]" as defined by R.C. 1345.01(C). *Taylor v. First Resolution Invest. Corp.*, 72 N.E.3d 573, 600 (Ohio 2016), *cert. denied sub nom. First Resolution Inv. Corp. v. Taylor-Jarvis*, 137 S. Ct. 398 (2016).

37. Debt collection is a "consumer transaction" as defined by R.C. 1345.01(A).

38. R.C. §1345.09(B) thus grants Plaintiff a private right of action against Defendants for $200 per violation of the CSPA, plus noneconomic damages of up to $5,000 per violation in an amount to be determined at trial, plus attorney fees.

39. Under the CSPA, the Court may award a multiplier for attorney fees for contingency fee cases, such as this one. *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 383 (6th Cir. 1993) (citing *Bittner v. Tri-Cty. Toyota, Inc.*, 569 N.E.2d 464 (Ohio 1991)).

40. Defendants committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A), when Defendants engaged in acts and practices in violation of the FDCPA as set forth above.

41. Such acts and practices have been previously determined by Ohio courts to violate the CSPA, R.C. 1345.01 *et seq*. *See, e.g.*, *Kelly v. Montgomery Lynch & Assocs., Inc.*, No. 1:07-CV-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008) ("[A]ny violation of any one of the enumerated sections of the FDCPA is necessarily an unfair

and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03").

42. Defendants committed such actions after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

43. Defendants' actions therefore violated the CSPA.

### COUNT III—VIOLATIONS OF THE OHIO CORRUPT PRACTICES ACT

44. The Ohio Corrupt Practices Act ("OCPA"), pursuant to R.C. 2923.32(A)(1), provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt."

45. The OCPA, pursuant to R.C. 2923.31(G) and R.C. 1.59, defines the term "person" to include an individual, corporation, business trust, estate, trust, partnership, and association.

46. Defendants are "person[s]" within the meanings of R.C. 2923.31(G) and R.C. 1.59.

47. The OCPA, pursuant to R.C. 2923.31(C), defines an "enterprise" to include "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity."

48. Defendants are legal entities and individuals associated with each other in fact through their common scheme of using unlawful means to collect upon consumer debts, and they therefore constitute an "enterprise" within the definition of R.C. 2923.31(C).

49. The OCPA, pursuant to R.C. 2923.31(E), defines a "pattern of corrupt activity" to mean "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."

50. Defendants violated R.C. 2923.32(A)(1) by participating in the affairs of an enterprise through multiple incidents of a corrupt activity, namely extortion.

51. "Extortion" under R.C. 2905.11 is a "corrupt activity." R.C. 2923.31(I)(2).

52. R.C. 2905.11 defines "extortion" by stating: "No person, with purpose to obtain any valuable thing . . . shall do any of the following: . . . (4) Utter or threaten any calumny against any person; (5) Expose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit."

53. Defendants thus participated in a "pattern of racketeering activity" when they, two or more times, falsely threatened Plaintiff with civil suits and criminal prosecutions that would expose Plaintiff to hatred, contempt, or ridicule and would damage Plaintiff's personal repute and impair her credit, with the intent to intimidate Plaintiff into making payments.

54. The OCPA, pursuant to 2923.34(E) provides that "[i]n a civil proceeding under division (A) of this section, any person directly or indirectly injured by conduct in violation of section 2923.32 of the Revised Code . . . shall have a cause of action for triple the actual damages the person sustained."

55. Plaintiff is entitled to triple her actual damages. Actual damages under the OCPA can and do include noneconomic damages. *Consolo v. United Mediation Grp., LLC*, No. 17-cv-681, 2018 U.S. Dist. LEXIS 65341, at *9 (N.D. Ohio Apr. 18, 2018). Plaintiff is therefore entitled to triple her noneconomic damages.

WHEREFORE, Plaintiff respectfully requests judgment as follows:

   a. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. § 1692k(a)(2)(A);

   b. Awarding Plaintiff actual damages as provided under 15 U.S.C. § 1692k(a)(1);

   c. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k(a)(3);

   d. Awarding Plaintiff $200 per violation of the CSPA, plus noneconomic damages up to $5,000 per violation in an amount to be determined at trial, plus reasonable attorney fees;

   e. Awarding Plaintiff triple damages, including triple noneconomic damages, under R.C. 2923.34(E), and attorney fees and punitive damages;

   f. Awarding Plaintiff the costs of this action; and

   g. Awarding any other relief as this Honorable Court deems just and appropriate.

**A TRIAL BY JURY IS DEMANDED.**

Dated:  April 2, 2019

By:  s/ Jonathan Hilton

Jonathan Hilton (0095742)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 427-5557
jhilton@hiltonparker.com
*Attorney for Plaintiff*
